CLERK'S OFFICE
U.S. DISTRICT COURT
AT ROANOKE, VA
FILED
March 28, 2025
LAURA A. AUSTIN, CLERK
BY: s/ M.Poff, Deputy Clerk

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | | |
|---|---|---|
| **BRIAN KEITH UZZLE,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 7:23CV00640 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **RANDY BOYD, ET AL.,** | ) | JUDGE JAMES P. JONES |
| | ) | |
| Defendants. | ) | |
| | ) | |

*Brian Keith Uzzle, Pro Se Plaintiff; Ann-Marie C. White, Assistant Attorney General, OFFICE OF THE ATTORNEY GENERAL, CRIMINAL JUSTICE & PUBLIC SAFETY DIVISION, Richmond, Virginia, for Defendants.*

The plaintiff, an unrepresented Virginia inmate, filed this civil action under 42 U.S.C. § 1983, alleging, among other claims, that prison officials retaliated against him for filing grievances about the so-called STAR Program of the Virginia Department of Corrections (VDOC), which seeks to protect inmates who fear confinement with the general inmate population.[1]   After review of the record, I

---

[1]   The Complaint names the following defendants: Randy Boyd, Unit Manager; Vicky Williams, Chief of Housing and Programming; Jeffery Artrip, Warden; Gregory Holloway, Regional Operations Chief; B. J. Ravizee, Institutional Ombudsman; Cathy Meade, Ombudsman Service Unit; S. Caughron, Operations Manager; Santos, former Unit Manager; S. T. Marcum, Lieutenant; J. Mays, Correctional Officer; W. R. Hensley, Hearings Officer; K. Paderick, Ombudsman Service Unit; Carl Manis, former Regional Administrator; Lisa Hernandez, Regional Administrator; Melvin Davis, former Warden; Joseph Ely, former Unit Manager; Harold Clarke, former VDOC Director; and John and Jane Does.

conclude that the defendants' motions to dismiss must be granted except for the retaliation claim against defendant Randy Boyd.

## I.  BACKGROUND.

Liberally construed, Uzzle's pro se pleadings set forth the following factual allegations on which he bases his claims.

From August 12, 2021, until June 14, 2023, Uzzle was assigned to the STAR Program at Wallens Ridge, designed for inmates "who have an unspecified fear to enter [the] general population."  Compl. 8, ECF No. 1.   Uzzle    alleges    that sometime in 2021, he told staff members that he was not getting along with his cellmate.   Thereafter, staff ordered him to move to another cell with that same cellmate.  On May 11, 2021, Uzzle refused the move and was sent temporarily to the Restrictive Housing Unit (RHU).  In RHU, inmates may only shower three times per week, have outside recreation two days per week, and have limited use of the telephone and commissary.  There, he was offered outside recreation in a cage two days per week, but did not participate for mental health reasons.  On July 12, 2021, he moved to a stepdown unit with more privileges, including a few hours of in-pod recreation for three days a week while handcuffed and in leg restraints and it appears,

outside recreation on other days.[2]  Again, Uzzle did not participate in these recreation

options for mental health reasons.

Uzzle entered the STAR Program on August 12, 2021, in the D-4 unit.  In this

unit, too, he was only allowed outside recreation in a single person cage.  In the first

week, Uzzle was provided only nine hours out-of-cell time.  Uzzle talked to Unit

Manager Ely about these concerns, and Ely said he "only had to allow [Uzzle] 1 hour

out-of-cell time every 3 days." *Id.* at 13.  According to Uzzle, policy calls for STAR

inmates to receive four hours out-of-cell time per day, and outside recreation for one

hour, five times per week.  Between August and November 2021, the unit did not

receive as much daily out-of-cell time as called for by policy.  Uzzle began filing

grievances about these policy violations.  Ely responded that the unit was getting

two hours inside recreation and two hours outside recreation in single person cages.

Uzzle asserts that these recreation types and times were not consistent with policy

and were provided only after Uzzle complained.  Warden Davis allegedly failed to

investigate Uzzle's complaints or correct the situation.  Uzzle did not partake in

outside recreation for mental health reasons, so he received only two hours out-of-

cell time a day at best while in this unit.

---

[2]  Uzzle often does not distinguish between out-of-cell time, in-pod, and outside
recreation.

On October 29, 2021, staff moved Uzzle to STAR Step 3 in C-2 unit, allegedly because he had been complaining about recreation hours in Step 2. In Step 3, Uzzle contends that, per policy, he should have had five hours out-of-cell time per day and one hour outside, up to seven times per week. Instead, he allegedly received two and a half hours out-of-cell time daily, at best. Officers routinely cancelled or shortened recreation times, often with no recreation at all for one-to-three days per week.

Uzzle filed multiple complaints about the lack of out-of-cell time. Defendant Santos responded to one complaint, stating that "daily operations are modified for the safety and security of staff and offenders." *Id.* at 14. Defendant Ravizee denied Uzzle's Regular Grievance on this issue at intake, and defendant Cathy Meade upheld that denial. After his complaints, however, Uzzle received five hours of out-of-cell time one day, then three and a half to four hours daily for three months. During this period, Santos allowed both tiers of Uzzle's housing pod to have indoor recreation at the same time.

In early October 2021, Randy Boyd became manager of the unit. Boyd returned to pulling only one tier at a time for indoor recreation. Uzzle thus got two hours less daily out-of-cell time. Officers often cancelled recreation. Uzzle began to file grievances again and then received consistently two and a half hours recreation per day.

-4-

On October 11, 2022, Uzzle became sick and could not stop vomiting. No officer escorted him to the medical unit, so he came out looking for medical attention. Boyd escorted him back to his cell. Uzzle became weak and laid down in front of his cell. Boyd then cuffed Uzzle and took him to RHU and brought a disciplinary charge against him. Uzzle remained in RHU for three days, allegedly became dehydrated, and was only given "Pepto" for the vomiting. *Id.* at 15.

On November 9, 2022, Uzzle was sent to RHU again briefly for disciplinary reasons and then sent to Step 1 of the STAR Program in the D-4 unit. Recreation policy violations allegedly continued, with cancellations and lockdowns.

On January 26, 2023, defendant S.T. Marcum escorted Uzzle to the C-2 unit of the STAR program, apparently intending to house him in a cell with Inmate Ebron. Uzzle told Marcum that due to Ebron's mental health issues, he should not have a cell partner. Marcum allegedly instructed Mays to escort Uzzle to RHU and bring a 201A disciplinary charge against him. Mays allegedly told Uzzle that he was aware of Ebron's mental health issues. The hearing on this charge was scheduled less than seven days after the disciplinary charge, in violation of VDOC policy. But the hearing was later postponed until February 2, 2023, and Uzzle received notice well over twenty-four hours before that hearing. Defendants Hensley and Artrip upheld Uzzle's conviction on this charge. Mays allegedly lied at the hearing, denying that he talked to Uzzle about Ebron's mental health problems.

On January 31, 2023, staff moved Uzzle back to C-2 unit, where he received two hours or less of recreation per day. He filed grievances about these policy violations and began receiving three-to-four hours of recreation daily.

On March 2, 2023, Boyd brought two institutional charges against Uzzle for possession of intoxicants and a trash bag. Boyd allegedly "lied and said that [Uzzle] along with [his] cell partner admitted to ownership." *Id.* at 17. Uzzle claimed that his cell partner claimed possession of both items. The hearing officer found Uzzle guilty of these charges.

In response to one of Uzzle's complaints about inadequate recreation time in STAR, unit manager Boyd responded, "If you want to write a statement to be removed from the program you can send it to your counselor." *Id.* at 8. Uzzle interpreted this response as a threat that Boyd would remove him from STAR for filing complaints. On May 31, 2023, Boyd responded to another of Uzzle's complaints, "Due to you wanting more out of cell time I will 'remove' you from the STAR program and have you sent to general population." *Id.*

On June 2, 2023, Boyd began the process of removing Uzzle from the STAR program without his consent or a "proper due process hearing." *Id.* at 8–9, 17. Uzzle asserts that this removal occurred because he "utilized [his] constitutional right to file complaints about a policy violation that was never corrected." *Id.* at 17. A counselor asked Uzzle what was "going on with recreation," and he told her about

all the violations of recreation policy. *Id.* at 8. He refused to sign any paperwork for the Institutional Classification Authority (ICA) procedure Boyd had started. Uzzle also told the counselor that he did not want to leave STAR and explained his fears about going into the general population. He also asked to be present at any ICA hearing about his removal from STAR.

Later that same day, Boyd conducted an ICA hearing without giving Uzzle two days' advance notice or allowing him to be present. *Id.* at 8–9. The ICA decision directed that Uzzle be removed from the STAR Program. On June 14, 2023, Boyd arranged for Uzzle to be moved to the general population. When Uzzle refused to go, staff moved him to RHU. Later that day, Uzzle was also served with a disciplinary charge for disobeying a direct order. On June 30, 2023, this disciplinary charge was dismissed.

When Uzzle received a copy of the ICA report, it showed that on June 5, 2023, defendant Vicky Williams approved Uzzle's removal from STAR. Uzzle appealed the ICA decision, but Ravizee and Artrip answered and upheld the decision, allegedly in violation of their authority. Defendant Gregory Holloway then upheld their decisions.

On June 20, 2023, Uzzle filed a retaliation complaint on Boyd for removing him from STAR because he had filed grievances about recreation policy violations.

Williams answered the complaint, but failed to correct the removal process that she knew was retaliatory. Artrip denied the grievance appeal.

Uzzle claims that since he was removed from the STAR Program, his mental health issues have become severe, and he suffers from sadness, anxiety, frustration, depression, anger, fear, and paranoia. He was allegedly prescribed mental health medications for the first time. In short, he complains, for almost two years, he has been unable to physically access the telephones, internet kiosks, or showers, to interact socially with other inmates, or to enjoy out-of-cell activities each day to the extent allowed by policy.

Liberally construed, Uzzle's Complaint appears to assert the following claims for relief under § 1983:

1. Defendant Randy Boyd retaliated against Uzzle in violation of the First Amendment by seeking to remove him from the Program because he had filed grievances related to that program.

2. Various defendants violated Uzzle's rights under the Eighth Amendment by housing him in units that did not get adequate out-of-cell time; and

3. Various defendants violated Uzzle's due process rights related to disciplinary hearings, classification hearings, grievances, and related appeals.

All but one of the named defendants have filed motions to dismiss. The largest group of defendants has also filed an Amended Motion to Dismiss, and as

such, I will dismiss their initial motion, ECF No. 52, without prejudice as moot.

Uzzle has responded to the defendants' motions, making them ripe for consideration.

## II. DISCUSSION.

### A. The Motion to Dismiss Standard.

"A Rule 12(b)(6) motion to dismiss tests only the sufficiency of a complaint."

*Mays ex rel. Mays v. Sprinkle*, 992 F.3d 295, 299 (4th Cir. 2021).[3]  In considering a

Rule 12(b)(6) motion, "[t]he district court must accept all well-pleaded allegations

in the complaint as true and draw all reasonable inferences in the plaintiff's favor."

*Langford v. Joyner*, 62 F.4th 122, 124 (4th Cir. 2023).  A complaint must plead facts

sufficient to "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v.

Twombly*, 550 U.S. 544, 570 (2007).  A facially plausible claim includes factual

content that "allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"[C]ourts are obligated to liberally construe pro se complaints, however

inartfully pleaded*."  Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 540 (4th Cir.

2017).  Liberal construction, however, does not allow me to formulate constitutional

claims for Uzzle based on conclusory statements alone.  *Beaudett v. City of

Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).  "A pleading that offers labels and

---

[3]  I have omitted internal quotation marks, alterations, and/or citations here and throughout this Opinion, unless otherwise noted.

0conclusions or a formulaic recitation of the elements of a cause of action will not

do. Nor does a complaint suffice if it tenders naked assertions devoid of further

factual enhancement." *Iqbal*, 556 U.S. at 678. "[T]he court need not accept legal

conclusions, threadbare recitals of the elements of a cause of action, or conclusory

statements." *Langford*, 62 F.4th at 124.

## B. Initial Matters.

Uzzle purports to allege claims against several John and Jane Doe defendants.

By Order entered July 11, 2024, the Court notified Uzzle that unless he provided

sufficient information to allow service of process on these defendants within thirty

days, the claims against them would be dismissed. Uzzle responded but failed to

identify any Doe defendants by name or title or to describe any specific action each

Doe defendant allegedly took, relevant to his claims in this case. The Court cannot

undertake identification of these defendants for him, and he has missed the deadline

to identify them. Therefore, I will dismiss without prejudice all claims against John

and Jane Doe defendants, pursuant to Rule 4(m) of the Federal Rules of Civil

Procedure.

One of the defendants, Joseph Ely, is not represented and has not responded

to the Complaint. However, for reasons to be discussed, I find that the § 1983 claims

against Ely must be summarily dismissed under 28 U.S.C. § 1915A(b)(1), which

requires the court to dismiss any plaintiff's complaint about prison conditions for failure to state a claim upon which relief could be granted.

Uzzle has presented his claims in this case under § 1983, a statute that permits an aggrieved party to file a civil action against a person for actions taken under color of state law that violated his constitutional rights. *Cooper v. Sheehan*, 735 F.3d 153, 158 (4th Cir. 2013). Uzzle appears to complain that various defendants violated state policies or job responsibilities through their actions or omissions. However, a state official's failure to abide by a state law or policy of any kind cannot support a claim that his or her actions deprived the plaintiff of federal rights as required to state a claim actionable under § 1983. *Riccio v. Cnty. of Fairfax,* 907 F.2d 1459, 1469 (4th Cir. 1990).

Uzzle sues all of the defendants in their individual and official capacities. His Complaint seeks monetary damages and injunctive relief to be transferred to Keen Mountain Correctional Center (Keen Mountain). It is well established that a plaintiff cannot recover monetary damages from state officials sued in their official capacities. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983."). Moreover, since filing this civil action, Uzzle has been transferred to Keen Mountain, making his demands for injunctive relief moot. *Rendelman v. Rouse*, 569 F.3d 182, 186 (4th Cir. 2009) ("[A]s a general rule, a prisoner's transfer or release

from a particular prison moots his claims for injunctive . . . relief with respect to his incarceration there.").

For the reasons stated, I will dismiss all claims alleging violations of VDOC policy, all claims for injunctive relief, and all claims against the defendants in their official capacities. Uzzle's factual allegations reflect that the events related to Claims 2 and 3 overlap with the events related to Claim 1 against defendant Boyd. Thus, for clarity's sake, I will first address Claims 2 and 3.

### C. Untimely Claims.

Because Congress did not set time limits for filing a § 1983 action, courts must utilize the statute of limitations applicable to general personal injury actions in the state where the tort allegedly occurred. *Owens v. Okure*, 488 U.S. 235, 239, 250 (1989). Such actions in Virginia are subject to Va. Code Ann. § 8.01-243(A) and thus must be filed within two years from the date on which the claim accrues. *DePaola v. Clarke*, 884 F.3d 481, 486 (4th Cir. 2018). A § 1983 claim accrues "when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action." *Nasim v. Warden, Md. House of Corr.*, 64 F.3d 951, 955 (4th Cir. 1995) (en banc).

Uzzle's complaints in Claim 2 about lack of out-of-cell time at Wallens Ridge in various housing units to which he was assigned begin in May 2021, when he was temporarily moved to RHU with limited showers and recreation time. In July 2021,

he moved to a step-down unit, and he entered the STAR program on August 12, 2021, apparently at Step 2. Again, he filed grievances about not receiving the amount of out-of-cell time allowed by VDOC policy.

Uzzle filed this Complaint, at the earliest, when he signed and dated it on September 21, 2023. Yet, he clearly knew of his prison conditions complaints much earlier. Accordingly, I conclude that Uzzle's claims concerning conditions from May 2021 to August 12, 2021, are barred under the statute of limitations, Va. Code Ann. § 8.01-243(A), because he did not file them within two years after those claims accrued. Therefore, I will summarily dismiss all portions of Claim 2 and 3 that concern events between these dates.[4]

### D. Eighth Amendment Conditions Claims.

The Eighth Amendment protects prisoners from cruel and unusual living conditions. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). "[T]he Constitution does not mandate comfortable prisons," however, and conditions that are "restrictive and even harsh . . . are part of the penalty that criminal offenders pay for their offenses against society." *Id.* at 347–49. It is well established that "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment."

---

[4] In any event, for reasons to be discussed, Uzzle's allegations fail to state a viable claim of deliberate indifference regarding recreation or any claim that he was deprived of a protected interest without due process between May and August 12, 2021, or at any other time at issue in this case.

*Wilson v. Seiter*, 501 U.S. 294, 297 (1991).  To sustain an unconstitutional conditions claim, a prisoner must show that: (1) objectively, the deprivation was sufficiently serious, in that the challenged, official acts caused denial of "the minimal civilized measure of life's necessities"; and (2) subjectively, the defendant prison officials acted with "deliberate indifference to inmate health or safety."  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  To meet the objective prong, the prisoner must show "significant physical or emotional harm, or a grave risk of such harm," resulting from the challenged conditions.  *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995).

The Fourth Circuit has held that denial of recreation — out-of-cell time and/or exercise — over lengthy periods of time can constitute an objectively serious deprivation under the *Farmer* analysis.  *Lyles v. Stirling*, 844 F. App'x 651, 654 (4th Cir. 2021) (unpublished) (vacating judgment for defendants where officials denied a prediabetic inmate out-of-cell exercise for ten months and his condition worsened); *Rivera v. Mathena*, 795 F. App'x 169, 174–76 (4th Cir. 2019) (unpublished) (finding that denial of recreation for two periods of two months while in segregation, with alleged resulting injuries, survived summary judgment).  On the other hand, courts have found that mere variation in the recreation type and times provided over shorter periods of time does not meet the objective prong of the *Farmer* standard.  *See, e.g., Hinzo v. S.C. Dep't of Corr.*, No. 1:23-3636-JFA-SVH, 2024 WL 4367589, at *4–5 (D.S.C. Aug. 13, 2024), *R. & R. adopted*, No. 1:23-CV-3636-JFA, 2024 WL

4367300 (D.S.C. Oct. 1, 2024) (finding from totality of circumstances no deprivation of human need where inmate in RHU who could exercise in cell, but had no outdoor recreation for five months although policy called for five hours outdoor recreation per week; inmate suffered no physical injury, and institution had staffing shortage).

To establish an Eighth Amendment claim, "[i]n considering the totality of the circumstances surrounding the denial of exercise, we look at the overall duration of incarceration, the length of time for which prisoners are locked in their cells each day, and the practical opportunities for the institution to provide prisoners with increased exercise opportunities." *Lyles*, 844 F. App'x at 653. In *Lyles*, the plaintiff's evidence indicated he was confined to his cell for more than ten months and his cell was too small to do exercises prescribed. *Id.* at 654.

In contrast, Uzzle's allegations reflect that in each type of confinement he experienced at Wallens Ridge, he had opportunities for out-of-cell time and outside and pod recreation several days per week and often daily. From May 11, 2021, until July 12, 2021, he was offered outside recreation two days per week, although he did not use it. From July 12 to August 12, 2021, Uzzle was housed in a step-down unit where he was offered table recreation and outside recreation two-to-three days per week, but again did not take it. Beginning August 12, 2021, after staff placed Uzzle in STAR, in the first week, he was offered nine hours of out-of-cell time. In the weeks thereafter, the amount of recreation time permitted varied, based on staffing

and security concerns and depending on whether Uzzle was housed in C-2 unit or D-4 unit. During his time assigned to STAR, Uzzle also spent some short periods in RHU, where inmates were permitted outside recreation two days per week. After his removal from STAR and before his transfer to another VDOC facility, Uzzle returned to RHU for an unspecified time, but does not allege that no recreation was offered to him there.

Unlike the plaintiff in the *Lyles* case, Uzzle does not allege that he was ever deprived of all opportunities for out-of-cell recreation for months. Uzzle's allegations reflect that in all the units where he was confined at Wallens Ridge, he had out-of-cell time and/or outside recreation offered at least one or more times per week. Taking the totality of the circumstances and the staffing and security reasons given for sometimes failing to provide as many recreation hours as VDOC policy provided for, I cannot find that Uzzle has alleged an objectively serious deprivation of his rights under the Eighth Amendment. As discussed, violations of VDOC policy are not sufficient to support a constitutional claim as required for a viable suit under § 1983. *Riccio*, 907 F.2d at 1469. Moreover, Uzzle does not allege that he suffered any serious physical or mental harm while in STAR units or in the RHU during that time. Rather, he claims that he suffered mental health issues after his removal from STAR.

For these reasons, I will grant the motions to dismiss as to all Eighth Amendment claims.  I will also summarily dismiss Uzzle's Eighth Amendment claims against defendant Ely, pursuant to 28 U.S.C. § 1915A(b)(1), for failure to state a claim upon which relief can be granted.

### E.  Due Process Claims.

The Due Process Clause provides that no state shall "deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1.  Where an inmate asserts a procedural due process claim, as Uzzle does, I must first consider whether he has asserted a protectable interest and, if so, whether he was afforded the minimum procedural protections required by the Fourteenth Amendment before he was deprived of that interest.  *Incumaa v. Stirling*, 791 F.3d 517, 526 (4th Cir. 2015).  "A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word liberty, . . .or it may arise from an expectation or interest created by state laws or policies."  *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005).

"[T]he Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement."  *Id.*  A protected liberty interest may arise, however, from state policies or regulations.  *Id.*  State statutes create a liberty interest entitled to the federal constitutional due process protections only if they protect against status changes that "impose[ ] atypical and significant hardship

on the inmate in relation to the ordinary incidents of prison life," or "inevitably affect the duration of" the inmate's confinement. *Sandin v. Conner*, 515 U.S. 472, 484, 487 (1995). "Discipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law." *Id.* at 485. Changes "in a prisoner's location, variations of daily routine, changes in conditions of confinement (including administrative segregation), and the denial of privileges [are] matters which every prisoner can anticipate [and which] are contemplated by his original sentence to prison." *Gaston v. Taylor*, 946 F.2d 340, 343 (4th Cir. 1991).

If an inmate establishes a protected liberty interest at stake, such as a loss of earned good conduct time, then he is entitled to constitutionally required procedural protections before governmental actors can deprive him of that interest. *Wolff v. McDonnell*, 418 U.S. 539, 557 (1974). These federal constitutional due process protections include: (1) advance written notice of the charges at least twenty-four hours prior, (2) a hearing before an impartial decision maker, (3) the opportunity to call witnesses and present evidence when doing so is not inconsistent with institutional safety and correctional concerns, (4) an opportunity for non-attorney representation if the inmate is illiterate or the disciplinary hearing is complex, and (5) a written decision setting forth the evidence relied upon and the reasons for the disciplinary action. *Id.* at 563–71.

Uzzle fails to meet any of the facets of this standard on his due process claims.

First, he does not point to any state statute creating a liberty interest for him to remain in any particular housing status within VDOC prison facilities.  He alleges confinement in different STAR units and brief periods of confinement in RHU, in May-August 2021 and in June–July 2023, with other short RHU stays of a few days in between.  Certainly, he does not demonstrate that reassignment between these housing units had any effect on the length of his confinement in the custody of the VDOC under his criminal sentence.  Uzzle also does not allege facts showing that his temporary stays in RHU or the more restrictive of the STAR units imposed atypical and significant hardships on him, related to conditions he would have faced in the general population.  As discussed, although the amount and type of recreation varied unit to unit, he was not deprived of all out-of-cell activity for more than a few days at a time, at most, and apparently enjoyed use of the phone and the commissary while housed in all units.  Therefore, I cannot find that Uzzle has any viable procedural due process claims related to his transfers between housing units at Wallens Ridge.

Second, Uzzle complains that he should have been present during the ICA hearing or other proceedings where officials determined to remove him from STAR or assign him to the general population.  Again, he fails to demonstrate a protected liberty interest in maintaining STAR status or in participating in ICA hearings.

"VDOC regulations fail to place substantive limitations on official discretion that would give rise to a legitimate claim of entitlement" in retaining any particular housing status. *Garner v. Clarke*, No. 7:18CV00560, 2021 WL 969200, at *5 (W.D. Va. Mar. 15, 2021). Without a protected liberty interest in maintaining STAR status, Uzzle had no right to federal due process protections under *Wolff* related to the classification proceedings that removed him from that program.

Third, Uzzle complains about some disciplinary proceedings. One of these charges was dismissed, making moot any claim that Uzzle was denied due process in those proceedings, as he fails to show that any deprivation occurred. As to the other disciplinary convictions Uzzle mentions, he does not allege what the imposed penalties were. Therefore, he fails to show that these proceedings deprived him of any protected liberty interest or to show that he was entitled to any procedural protections other than what he received under VDOC policy. *See DeFour v. White*, No. 7:22CV00703, 2024 WL 1337203, at *15 (W.D. Va. Mar. 28, 2024) (dismissing the inmate's due process claim based upon his disciplinary conviction because he "ha[d] not alleged what deprivation he suffered"). Moreover, Uzzle does not identify any federal procedural protections that were not provided to him. For example, under *Wolff*, only a twenty-four hours' notice is required before a disciplinary hearing, and under that standard, Uzzle received more than twenty-four hours' notice of the one hearing about which he complains of insufficient notice. As

discussed, violations of deadlines or procedures set forth in VDOC disciplinary regulations do not rise to the level of a federal constitutional violation actionable under § 1983.[5] *Riccio*, 907 F.2d at 1469.

To the extent that Uzzle believes that any defendant's handling of his grievances or appeals deprived him of some protected interest without due process, he is mistaken. It is well settled that "inmates have no constitutional entitlement or due process interest in access to a grievance procedure. An inmate thus cannot bring a § 1983 claim alleging denial of a specific grievance process." *Booker*, 855 F.3d at 541. Without any right to the grievance procedure, Uzzle has no constitutional right to have officials comply with any certain process within the operation of the grievance procedure.

Moreover, to state a claim under § 1983, a plaintiff must plead facts supporting a reasonable inference that each defendant had "personal involvement" in the alleged constitutional violation. *Iqbal*, 556 U.S. at 670. A complaint that does not plausibly allege a defendant's personal involvement in the underlying constitutional violation fails to state a § 1983 claim against that defendant. A supervisory or administrative official's responding to a grievance about another

---

[5] For these same reasons, Uzzle has no viable § 1983 claim that defendant Artrip violated his federal due process rights by failing to overturn his disciplinary convictions, or that any defendant should have overturned the decision to remove him from Star, based merely on alleged violations of VDOC policy.

official's allegedly unconstitutional actions does not place liability on the responder for the supposed underlying misdeed without evidence of the responder's personal involvement in it.   Thus, prison officials cannot be held liable merely for their responses to, much less their mere participation in, the grievance process.   *Pace v. Dillman*, No. 7:21CV00648, 2023 WL 6147791, at *5 (W.D. Va. Sept. 20, 2023).

Uzzle also complains that some defendants who responded to grievance documents failed to investigate his allegations before doing so.   Courts have held that individuals have no independent constitutional right to such investigations under § 1983.   *Powell v. Temple*, No. 1:22CV302 (TSE/JFA), 2022 WL 2306762, at *4 (E.D. Va. June 27, 2022). Put more broadly, "a claim based on an inadequate investigation fails to state a constitutional violation because private citizens have no constitutional or federal statutory right to compel the investigation of another person." *Miles v. Mitchell*, No. 3:18-CV-P116-CRS, 2018 WL 5929643, *5 (W.D. Ky. Nov. 13, 2018).

For the reasons stated, I will grant the Motions to Dismiss as to Claim 3, regarding all due process claims and any claims regarding disciplinary, classification, or grievance proceedings.   Pursuant to § 1915A(b)(1), I will also summarily dismiss all such claims against defendant Ely.

F. Retaliation Claim.

In Claim 1, Uzzle alleges that defendant Boyd removed him from the STAR Program to retaliate against him for filing grievances about recreation policy violations there. "To state a colorable First Amendment retaliation claim, a plaintiff must allege that (1) he engaged in protected First Amendment activity, (2) the defendant took some action that adversely affected his First Amendment rights, and (3) there was a causal relationship between his protected activity and the defendant's conduct." *Martin v. Duffy*, 977 F.3d 294, 299 (4th Cir. 2020) (*Martin II*). Uzzle has stated facts meeting the first prong of this test, because filing grievances is an activity protected against retaliation under the First Amendment. *Martin v. Duffy*, 858 F.3d 239, 249 (4th Cir. 2017) (*Martin I*). Uzzle has also alleged facts indicating that Boyd began the process of removing Uzzle from the STAR Program because of his complaints that he was not getting enough recreation or out-of-cell time in those units. Thus, I find that Uzzle has met the third prong under *Martin II* — causation.

The second prong under *Martin II* — adverse action — is not as clear cut at this stage of the case. "For purposes of a First Amendment retaliation claim under Section 1983, a plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights." *Martin I*, 858 F.3d at 249 (quoting *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 500 (4th Cir. 2005)).

This is an "objective standard"; thus, "[w]hile the plaintiff's actual response to the retaliatory conduct provides some evidence of the tendency of that conduct to chill First Amendment activity, it is not dispositive." *Constantine*, 411 F.3d at 500. Even so, "a plaintiff seeking to recover for retaliation must show that the defendant's conduct resulted in something more than a de minimis inconvenience to her exercise of First Amendment rights." *Id.*

Uzzle asserts that removal from the STAR Program was an adverse action in this context. It is true that prison officials have broad discretion to relocate inmates for safety and administrative needs, and such relocations are a contemplated facet of an inmate's custodial sentence. *Jones v. Solomon*, 90 F.4th 198, 214 (4th Cir. 2024). Nevertheless, "they may not violate the First Amendment by transferring a prisoner in retaliation for protected conduct." *Id.* Moreover, a transfer to administrative or disciplinary segregation, or to a more restrictive or dangerous prison setting could deter a person of ordinary firmness from exercising his First Amendment rights, such that this type of transfer could constitute adverse action in a retaliation analysis. *Id.*

Taking Uzzle's allegations in the light most favorable to him, I find that for purposes of the retaliation analysis, he has stated facts showing removal from the STAR Program was adverse action. He alleges that removal meant an order to enter the general population, which he did not want to do; when he refused to do so, he received a disciplinary charge and was transferred to RHU with its restricted

privileges.  Therefore, I conclude that removal from STAR was likely to deter a person of ordinary firmness from exercising his First Amendment rights.  *Id.* at 215. While Uzzle did later exercise his rights by filing this lawsuit, at least at this stage of the case, that fact is not fatal to his First Amendment retaliation claim regarding Boyd's actions to remove him from the STAR Program and order him to enter general population.  *Constantine*, 411 F.3d at 500.  I will deny Boyd's Motion to Dismiss as to Claim 1, alleging retaliatory removal from the STAR Program.

### G.  Claims Against Individual Defendants.

Some of Uzzle's apparent claims against individual defendants do not fit neatly inside the claims I have defined from his Complaint.  However, I find that all except the retaliation claim against Boyd must be dismissed.

Uzzle alleges that defendants Marcum and/or Mays put him in a cell with an inmate who had mental health issues, and that Marcum ordered Mays to bring a disciplinary charge against Uzzle when he refused to remain in that cell.  This scenario does not include facts supporting any Eighth Amendment claim.  It does not show any sufficiently serious deprivation of Uzzle's basic human needs or any resulting harm to Uzzle.  *See Watson v. Kanode*, No. 7:21-CV-00119, 2023 WL 6447318, at *5 (W.D. Va. Sept. 29, 2023) (holding that "[w]ithout more, the mere presence of mentally ill offenders" in plaintiff's housing unit was "insufficient to establish a grave risk of significant physical or emotional harm" as necessary to

support an Eighth Amendment claim). Uzzle also fails to show that he had any federally protected liberty interest to refuse entering the cell as ordered. Nor does he state facts showing that he did not receive all federally required procedural protections at the disciplinary hearing on this charge.

Defendant Hensley upheld one of the disciplinary convictions at issue in this case, despite Uzzle's argument that he did not receive the amount of notice required by VDOC procedures. As discussed, state policy violations cannot support a constitutional claim as required to proceed under § 1983, and Uzzle's allegations reflect that he received more than the twenty-four hours' notice required under federal law. Uzzle also fails to identify what deprivation occurred or what penalty he received to show that it represented an atypical and harsh condition under *Sandin*, another requirement of a § 1983 due process claim.

Uzzle does not allege any facts in the Complaint concerning actions by Manis, Hernandez, Caughron, Paderick, and Clarke in violation of his constitutional rights. Under § 1983, "liability will only lie where it is affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights." *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977). "[W]hen a complaint contains no personal allegations against a defendant, that defendant is properly dismissed." *Eaglin v. McCall*, No. 0:18-3079-TLW-PJG, 2019 WL 7654425, at *2 (D.S.C. Aug. 21, 2019), *R. & R. adopted*, 2020 WL 376245 (D.S.C. Jan. 23, 2020).

III. CONCLUSION.

For the reasons stated, it is hereby **ORDERED** as follows:

1. All claims against the John and Jane Doe defendants are DISMISSED WITHOUT PREJUDICE, pursuant to Federal Rule of Civil Procedure 4(m).

2. The Motion to Dismiss by defendant Clarke, ECF No. 30, is GRANTED.

3. The Amended Motion to Dismiss, ECF No. 54, is GRANTED IN PART AND DENIED IN PART; the motion is GRANTED as to all claims against defendants Artrip, Caughron, Davis, Hensley, Hernandez, Holloway, Manis, Marcum, Mays, Meade, Ravizee, Santos, and Williams, and as to defendant Boyd regarding all deliberate indifference and due process claims, all claims against him in his official capacity, and all claims regarding violations of VDOC regulations; the motion is DENIED as to the retaliation claim against defendant Boyd in Claim 1, and he is directed to file an answer and/or a summary judgment motion within forty-five days from the entry date of this Opinion and Order.

4. The prior Motion to Dismiss filed by many of the defendants in Paragraph 2, ECF No. 52, is DISMISSED WITHOUT PREJUDICE as moot.

5. The Motion to Dismiss by defendant Paderick, ECF No. 63, is GRANTED.

6. All claims against defendant Ely are summarily DISMISSED WITHOUT PREJUDICE, pursuant to 28 U.S.C. § 1915A(b)(1), for failure to state a claim upon which relief could be granted.

7. The Clerk shall terminate all defendants except Randy Boyd as parties to this case.

ENTER:  March 28, 2025

/s/  JAMES P. JONES
Senior United States District Judge