CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

February 02, 2026

LAURA A. AUSTIN, CLERK
BY:
    s/A. Beeson
    DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE  DIVISION

| | |
|---|---|
| **BRIAN KEITH UZZLE,** ) | |
| ) | |
| Plaintiff, ) | Case No. 7:23CV00640 |
| ) | |
| v. ) | **OPINION AND ORDER** |
| ) | |
| **RANDY BOYD, ET AL.,** ) | JUDGE JAMES P. JONES |
| ) | |
| Defendants. ) | |
| ) | |

*Brian Uzzle, Pro Se Plaintiff; Cristina Elisabeth Agee, OFFICE OF THE ATTORNEY GENERAL, CORRECTIONAL LITIGATION SECTION, Richmond, Virginia, for Defendant Randy Boyd.*

The plaintiff, an unrepresented Virginia inmate, filed this civil action under 42 U.S.C. § 1983, alleging, among other things, that prison officials retaliated against him for filing grievances by removing him from the Steps to Achieve Reintegration (STAR) Program of the Virginia Department of Corrections (VDOC), which seeks to protect inmates who fear confinement with the general inmate population.  I previously granted partial dismissal of the Complaint, with only Uzzle's retaliation claim against defendant Boyd remaining.  Boyd has since filed a Motion for Summary Judgment and a supporting memorandum.  The matter having been fully briefed by the parties, it is now ripe for consideration.  After review of the record, I conclude that Boyd's Motion for Summary judgment must be denied.

# I. BACKGROUND

At all relevant times, Uzzle was incarcerated at Wallens Ridge State Prison (Wallens Ridge) and Boyd served as a Unit Manager for the facility.  Uzzle was approved for the STAR Program on August 12, 2021.  Def.'s Mot. Substitute Aff., Pozeg Am. Aff. 3, Dkt. No. 96-1.  The STAR Program is a three-step program designed to help inmates safely reintegrate into general population housing.  *Id.* Enclosure A at 1.  The goal of the program is to motivate inmates who refuse to leave the segregation of the Restrictive Housing Unit (RHU) and enter general population housing.  *Id.* Pozeg Am. Aff. 1.  As relevant here, the STAR Program allows the following out-of-cell activity for inmates:

| STAR – Step 1 | STAR – Step 2 | STAR – Step 3 |
|---|---|---|
| • Out of cell time, 4 hours a day, both tiers (unrestrained). Showers and telephone calls permitted during pod time. Outside recreation up to both tiers at a time for 1 hour, 5 times per week. | • Out of cell time/programming 5 hours a day both tiers (unrestrained). Showers and telephone calls permitted during pod time. Outside recreation up to 1 tier at a time for 1 hour, 5 times per week. | • Out of cell time/programming 5 hours a day up to 1 tier at a time (unrestrained). Showers and telephone calls permitted during pod time.<br>• Outside recreation up to 1 tier at a time for 1 hour, up to 7 times per week. |

*Id.* Enclosure A, Attach. A at 1.

During Uzzle's time in the STAR Program, he began filing grievances regarding out-of-cell time received.  Def.'s Mem. Supp. Mot. Summ. J. Vilbrandt Aff, Enclosure A at 31, Dkt. No. 89-2.  On multiple occasions, Uzzle complained that he was denied the amount of out-of-cell time permitted by the STAR Program policy.  For example, one grievance states that "on 10/7/21 I was denied 4 hours outside of cell time when I was allowed only 2 hrs. outside of cell time in violation of 830.B attachment A.  I'm currently in the STAR Program in D-4 Unit.  I have been denied 4 hrs. outside of cell time since I came on 8/5/21."  *Id.* at 30.  Uzzle's subsequent grievances echoed this sentiment through June of 2023.  *Id.* at 15–31.

Following a grievance concerning out-of-cell or recreation time, Boyd responded, "I have approved for you to be removed from the STAR program and go to general population," and "[d]ue to you wanting more out of cell time I will remove you from the Star program and have you placed in general population."  *Id.* at 17. After an Institutional Classification Authority (ICA) hearing held on June 2, 2023, Uzzle was removed from the STAR Program based on Boyd's recommendation. Pozeg Am. Aff., Enclosure C., Dkt. No. 96-1.  The rationale provided on the ICA hearing report stated, "[i]nmate wants more out of cell time.  Removal from Star Program." *Id.*  According to the Declaration of B. Gibson, a Case Worker at Wallens Ridge, the out-of-cell activity in general population housing is "7 minimum hours out of cell/bed area to include movement and meals.  This includes access to day

room including until 9 p.m. Sunday-Saturday. Yard activity ends at 6 p.m. or sundown whichever is first, except for feeding." Def.'s Mem. Supp. Mot. Summ. J. Gibson Decl. 3, Dkt. No. 89-3.

Uzzle then refused to move to general population and was instead assigned to the Restorative Housing Unit (RHU). Pozeg Am. Aff. 3, Dkt. No. 96-1. The duration of time Uzzle spent in the RHU is disputed. According to the Pozeg Amended Affidavit, Uzzle remained in the RHU until June 28, 2023. *Id.* However, Uzzle states that he was there until July 31, 2023. Pl.'s Resp. Def's Mot. Summ. J. 2, Dkt. No. 108.

In any event, during this timeframe, Uzzle filed additional grievances regarding his removal from the STAR Program, claiming the removal was in retaliation for filing grievances. Vilbrandt Aff., Encl. A at 15, Dkt. No. 89-2. He further claimed that he was removed from the STAR Program without the opportunity to be present for the hearing and that he did not consent to be removed from the program. *Id.* at 14. Although the reason is unclear, Uzzle was thereafter reassigned to the STAR Program on July 31, 2023. Pozeg Am. Aff., Encl. D, Dkt. No. 96-1. Uzzle was later transferred to the STAR Program at Keen Mountain Correctional Center. *Id.* Encl. E.

The issue disputed is Boyd's removal of Uzzle from the STAR Program to be placed in the general population setting. Boyd asserts that he recommended Uzzle's

-4-

removal because Uzzle wanted more out of cell time, and that the general inmate

population housing offered that solution.  However, Uzzle claims that Boyd removed

him from the STAR Program in retaliation for filing grievances about not receiving

the program's allotted out-of-cell time when Boyd knew Uzzle was in the program

for safety reasons.

## II.  DISCUSSION.

### A. The Summary Judgment Standard.

The Federal Rules of Civil Procedure provide that a court should grant

summary judgment "if the movant shows that there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ.

P. 56(a).  "A dispute is genuine if a reasonable jury could return a verdict for the

nonmoving party."  *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir.

2013) (internal quotation marks and citation omitted).  "A fact is material if it might

affect the outcome of the suit under the governing law."  *Id.* (internal quotation

marks and citation omitted).  In considering a motion for summary judgment, the

court must view the facts and justifiable inferences in the light most favorable to the

nonmoving party.  *Id.* at 312-13.  To withstand a summary judgment motion, the

nonmoving party must produce sufficient evidence from which a reasonable jury

could return a verdict in his favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

248 (1986).

B.  First Amendment Retaliation.

Uzzle has presented his claims in this case under § 1983, a statute that permits an aggrieved party to file a civil action against a person for actions taken under color of state law that violated his constitutional rights.  *Cooper v. Sheehan*, 735 F.3d 153, 158 (4th Cir. 2013).  An official action motivated by retaliation for the plaintiff's exercise of a constitutionally protected right can violate the First Amendment, even if the act, when taken for a different reason, might have been legitimate.  *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 283 (1977).  However, merely conclusory allegations of retaliation cannot suffice to state any constitutional violation actionable claim under § 1983.  *Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994).  In addition, courts must treat an inmate's claim of retaliation by prison officials "with skepticism because [e]very act of discipline by prison officials is by definition retaliatory in the sense that it responds directly to prisoner misconduct."  *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996) (internal quotation marks and citation omitted).

To succeed on a § 1983 retaliation claim, Uzzle "must allege that (1) he engaged in protected First Amendment activity, (2) the defendant took some action that adversely affected his First Amendment rights, and (3) there was a causal relationship between his protected activity and the defendant's conduct."  *Martin v. Duffy*, 977 F.3d 294, 299 (4th Cir. 2020) (quoting *Martin v. Duffy*, 858 F.3d 239,

249 (4th Cir. 2017)) (alterations omitted).  Boyd does not dispute the first element;

rather, by arguing that his actions were not adverse and that there was no causal

relationship between Uzzle's protected activity and Boyd's conduct, he insists that

Uzzle's removal from the STAR Program was "*more favorable*" and something

Boyd "*had*" to do to meet Uzzle's requests.  Def.'s Mem. Supp. Mot. Summ. J. 13,

14, Dkt. No. 89.

I previously determined that Uzzle stated facts showing removal from the

STAR Program was an adverse action because it was likely to deter a person of

ordinary firmness from exercising his First Amendment rights.  Op. & Order 23,

Dkt. No. 73 (citing *Constantine v. Rectors & Visitors of George Mason Univ.*, 411

F.3d 474, 500 (4th Cir. 2005)).  Now the question becomes whether Boyd has shown

that there is no genuine dispute as to any material fact and he is entitled to judgment

as a matter of law.  The action complained of here is Boyd's removal of Uzzle from

the STAR Program to be placed in general population following Uzzle's filing of

grievances related to officials' noncompliance with the STAR Program's allotted

recreation time.  As the Fourth Circuit has explained, "a transfer or placement in a

more restrictive or dangerous setting can constitute an adverse action." *Jones v.

Solomon*, 90 F.4th 198, 214 (4th Cir. 2024).  Important to the determination of

whether such an action is adverse is the "objective" perception of the dangerousness

implicated.  *Id.* at 214–15 (internal quotation marks and citation omitted).  In support

of the argument that moving an inmate from the STAR Program to general population does not constitute an adverse action, Boyd insists that general population provides "more favorable cell conditions" and cites to the Gibson Declaration, which provides a chart comparing cell conditions. Gibson Decl. 3, Dkt. No. 89-3. The chart shows that the maximum amount of out-of-cell time for inmates in the STAR Program is 5 hours per day; whereas, the minimum amount of out-of-cell time for inmates in general population is 7 hours. *Id.* In response, however, Uzzle attaches the VDOC STAR Program Local Operating Procedure, which explains that the purpose of the program is to motivate inmates to "enter general population due to an unspecified fear." Pl.'s Resp. Def.'s Mot. Summ J. Attach. 11, Dkt. No. 108-2. And as Uzzle states in his verified response, he and other inmates were in the STAR Program for safety reasons. A reasonable jury could find that, despite the general population's arguably more favorable cell conditions, it could be objectively perceived as a more dangerous environment than that of the STAR Program and thus constitute adverse action for an inmate to be transferred to general population.

The defendant goes on to argue that "there is no evidence that the Plaintiff's First Amendment rights were at all chilled," pointing to Uzzle's written complaints, grievances, and this lawsuit being filed after his removal from the STAR Program. Def.'s Mem. Supp. Mot. Summ. J. 15, Dkt. No. 89. Indeed, "the plaintiff's actual response to the retaliatory conduct provides some evidence of the tendency of that

conduct to chill First Amendment activity." *Jones*, 90 F.4th at 214. However, such response "is not dispositive" and, as the *Jones* court explains, "because the alleged retaliatory adverse action was the transfer itself, facts relating to what occurred after the transfer are insufficient to warrant summary judgment for the Defendants." *Id.* at 215. I will reach the same conclusion here.

Even if a reasonable jury could find that Uzzle's transfer would not constitute adverse action, there is a question of fact as to the third element of Uzzle's retaliation claim. The third prong of the standard requires the plaintiff to show a causal connection between his First Amendment activity and the alleged adverse action. A plaintiff must put forth evidence to show that his "protected conduct was a substantial or motivating factor in a prison guard's decision to take adverse action." *Martin*, 977 F.3d at 300. Then, "[o]nce a plaintiff establishes his protected conduct was a substantial or motivating factor in the defendant's decision to take adverse action," the defendant bears the burden of proving that he "would have reached the same decision absent a retaliatory motive." *Id.* at 301, 303–04.

Uzzle put forth evidence that showed Boyd's recommendation to remove Uzzle from the STAR Program was in direct response to Uzzle's numerous grievances. However, whether Boyd would have removed Uzzle from the STAR Program absent a retaliatory motive is a question of material fact. The crux of Boyd's argument is that he removed Uzzle from the STAR Program and

recommended he be placed in general population so that he could grant Uzzle's

request for more out-of-cell time, which does not demonstrate a retaliatory motive.

In support of this contention, Boyd cites the Pozeg Affidavit, which states that

"Uzzle was removed from the STAR Program because he wanted more recreation

time than the Program allowed."  Pozeg Am. Aff. 4, Dkt. No. 96-1.  However,

Uzzle's verified response and the attached written complaints indicate that his issue

wasn't with getting more out of cell time than the STAR Program allowed, but with

officials not providing the out of cell time allowed by the STAR Program.  Given

these conflicting narratives, there is a genuine dispute of material fact that must be

resolved by a jury.  *See Martin*, 977 F.3d at 305 ("Credibility determinations, the

weighing of the evidence, and the drawing of legitimate inferences from the facts

are jury functions, not those of a judge.") (quoting *Liberty Lobby*, Inc., 477 U.S. 242,

255).

### C.  Qualified Immunity.

Boyd argues that he is entitled to qualified immunity here, asserting that he

"is unaware of any relevant and published case law which clearly established in June

2023 that removal from a prison program and a recommendation that an inmate be

housed in more favorable cell conditions is sufficiently adverse to support a First

Amendment retaliation claim."  Def.'s Mot. Summ. J. 16, Dkt. No. 89.

"Qualified immunity protects government officials from civil liability and suit insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Jones*, 90 F.4th at 207 (quoting *Attkisson v. Holder*, 925 F.3d 606, 623 (4th Cir. 2019)). "To overcome an official's claim of qualified immunity, the plaintiff must show: (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Id.* (internal quotation marks and citation omitted).

The "First Amendment right to be free from retaliation by prison officials for filing a grievance was clearly established in 2010." *Jones*, 90 F.4th at 216 (quoting *Martin*, 858 F.3d at 251). Furthermore, considering existing case law, the *Jones* court deduced that "a transfer or placement in a more restrictive or dangerous setting can constitute an adverse action." *Id.* at 214–15. Therefore, when Boyd removed Uzzle from the STAR Program to be placed in the general population setting following his grievance filings, it was clearly established that such action may violate his First Amendment rights.

To the extent that Boyd argues that because the *Jones* case did not exist when the conduct occurred the applicable law was not clearly established, I disagree. Although the *Jones* case more succinctly states that "a transfer or placement in a more restrictive or dangerous setting can constitute an adverse action," the court

relied on existing case law to make such conclusion. *Id.* Specifically, the *Jones* court, in part, relied on its decision in *Martin*, where it had determined in 2017 that transferring an inmate to segregation was sufficient to allege a First Amendment retaliation claim. *Martin*, 858 F.3d at 249–50. In support of that decision, the court in *Martin* cited to a case decided in 2000, which found that "plaintiff's confinement in administrative segregation resulting in reduced access to amenities and programs would allow a fact finder to conclude that placement in administrative segregation amounted to an adverse action." *Id.* at 250 (quoting *Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000)). Reduced access to a program is the precise issue that Uzzle is challenging when claiming that removal from the STAR Program was retaliatory. Therefore, the constitutional right at issue was clearly established at the time of the challenged conduct, and Boyd is not entitled to qualified immunity.

In conclusion of his qualified immunity argument, Boyd maintains that "while the Fourth Circuit has held that 'a transfer or placement in a more restrictive or dangerous setting can constitute an adverse action[]' . . . this is again, not what occurred in this case," and reiterates the argument that Uzzle was recommended to be placed in more favorable conditions to satisfy his requests. Def.'s Mem. Supp. Mot. Summ. J. 18–19, Dkt. No. 89 (citations omitted). However, as I have explained, a reasonable jury could draw inferences to determine that Boyd's action of removing Uzzle out of the STAR Program was sufficiently adverse, and whether

Boyd had a retaliatory motive for doing the same is a question of material fact that

a jury must decide.

### D. Notices.

Finally, Uzzle filed two notices in this matter that include requests for the

court's consideration and I will address each in turn.

First, Uzzle filed a document titled, "Notice to the courts tha[t] Defendant did

not comply with Pre-trial Disclosure that he construed as a request for Production of

Documents."  Pl.'s Notice, Dkt. No. 92.  Uzzle asserts that the defendant provided

outdated operating procedures but concedes that he has access to the updated ones.

He further states that he requested that the defendant provide the following:

> Internal Prison Rules and regulations not stated in Local Operating
> Procedure 830.B or its attachment A that were used to govern Wallens
> Ridge Star Program at the time of the claim (2021-2023) to include the
> rules and citations when placing an Inmate in the Star Program (Intake),
> when managing  Inmates in the Star Program, and most importantly
> when releasing and removing an Inmate from the Star Program.

*Id.* at 1–2.  Uzzle then requests that the court "force" the defendant to produce "all

documents related to claim 1 explained above, and every document related to claim

one to include the Internal Prison Administration's rules that all VADOC employees

have to follow not shown in O.P. 830.1 or 866.1 when handling Inmate appeal

grievances of Classification decisions."  *Id.* at 2.

-13-

In response, the defendant stated that counsel had since sent supplemental responsive documents, including "versions of the statewide Operating Procedure and Wallens Ridge's LOP [Local Operating Procedure] that were not previously produced, along with two additional documents related to how inmates were screened for placement in the STAR Program." Resp. to Notice 3, Dkt. No. 95. Counsel for the defendant further indicated that all relevant documents to date have been provided to Uzzle. *Id.* There was no further reply by Uzzle related to this matter, and Uzzle later filed a Response to the defendant's Motion for Summary Judgment with attachments including operating procedures regarding the STAR Program.

Accordingly, to the extent that Uzzle's Notice was intended to be a motion to compel or for discovery sanctions under Federal Rule of Civil Procedure 37, it will be denied as moot, given that it appears the defendant has provided the relevant documents in existence to Uzzle. Should Uzzle request that the defendant produce any further evidentiary materials he believes may exist in preparation for the trial of this matter, he must file a motion specifically describing the document to be produced within 21 days of entry of this Opinion and Order.

Second, Uzzle filed a document, also titled as a Notice, that describes an Order extending the deadline for the defendant to file a motion for summary judgment as "fraudulent or incorrect." Pl.'s Notice, Dkt. No. 93. By this Notice, Uzzle moves

the court for entry of an order that renders void the Order extending the deadline.

However, the Order entered on June 4, 2025, was not fraudulent or incorrect, and

appropriately extended the defendant's deadline for filing a motion for summary

judgment within its discretion. *See Turner ex rel. Estate of Turner v. United States*,

736 F.3d 274, 283 (4th Cir. 2013) (explaining that an "extension of time to file [a]

motion lay within the sound discretion of the district court"). Uzzle further requests

that the defendant's late summary judgment filing be rendered void. However, as

stated, the court properly granted the defendant an extension of time, with which he

complied. Even if it was determined that the defendant did not comply with requisite

deadlines, I have considered the defendant's Motion for Summary Judgment on the

merits and will not void the defendant's motion on a procedural technicality at this

juncture. *See Parrish v. United States*, 605 U.S. 376, 384 (2025) ("'decisions on the

merits' ought not be 'avoided on the basis of . . . mere technicalities.'") (quoting

*Foman v. Davis*, 371 U.S. 178, 181 (1962).

Uzzle filed a document making similar requests that was titled, "Objection to

Magistrate Judge Pamela Meade Sargent Pre-Trial order dated 6/4/25, that I received

on June 17, 2025 around 7:10 p.m." Pl.'s Obj., Dkt. No. 94. Although I duly note

Uzzle's objection, the requests made by Uzzle here will likewise be denied for the

reasons provided in the preceding paragraph.

III. CONCLUSION.

For the foregoing reasons, it is hereby **ORDERED** as follows:

1. Boyd's Motion for Summary Judgment, Dkt. No. 88, is DENIED;

2. Uzzle's Notice, Dkt. No. 92, is DENIED as moot. Should Uzzle request that the defendant produce any further evidentiary materials he believes may exist in preparation for the trial of this matter, he must file a motion specifically describing the document to be produced within 21 days of entry of this Opinion and Order;

3. Uzzle's requests outlined in Notice, Dkt. No. 93, and Objection, Dkt. No. 94, are DENIED; and

4. The Clerk is DIRECTED to set this matter for a jury trial at the United States District Courthouse in Abingdon, Virginia, solely as to the claim that Boyd retaliated against Uzzle for filing grievances by removing him from the STAR Program.

ENTER: February 2, 2026

/s/  JAMES P. JONES
Senior United States District Judge